UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| KAREN PHILLIPS,<br><br>    Plaintiff,<br><br>  v.<br><br>CAROLYN W. COLVIN, Acting Commissioner of Social Security,<br><br>    Defendant. | Case No. 12-cv-05961 NC<br><br>**ORDER RE: CROSS-MOTIONS FOR SUMMARY JUDGMENT**<br><br>Re: Dkt. Nos. 14, 15 |

Plaintiff Karen Phillips seeks judicial review of the Commissioner of Social Security's final decision denying Phillips' claim for Supplemental Security Income ("SSI") as a person disabled and unable to engage in substantial gainful activity. Both parties move for summary judgment. The issue before the Court is whether the ALJ properly evaluated the medical evidence and rejected opinions of examining physicians for specific and legitimate reasons that are supported by substantial evidence in the record. For the reasons explained below, the Court finds that the ALJ did not properly evaluate the medical evidence, and therefore GRANTS plaintiff's motion for summary judgment and DENIES defendant's cross-motion for summary judgment.

Case No. 12-cv-5961 NC
ORDER RE: SUMMARY JUDGMENT

# I. BACKGROUND

## A. Agency Review

On April 30, 2007, Phillips applied for SSI benefits on the basis that she was disabled since July 13, 2004, due to shoulder pain and numbness. (AR 99). The Social Security Administration ("SSA") denied Phillips' request for SSI benefits on September 7, 2007, and again following reconsideration on July 8, 2008. (AR 91-92, 97-99). Based on several medical reports, SSA determined that although Phillips did suffer discomfort, Phillips' "condition [was] not severe enough to keep [her] from working." (AR 91).

## B. Administrative Review

Phillips requested administrative review of the SSA's decision. (AR 103). At a hearing before an Administrative Law Judge on March 8, 2011, Phillips testified about her shoulder pain and numbness. (AR 43-62). Vocational expert Malcolm Brodzinsky also testified. (AR 59-64).

### 1. Phillips' Testimony at the March 8, 2011 Hearing

Phillips is fifty-seven years old and resides with her daughter and granddaughter. (AR 43-44). Phillips testified that she suffered from a number of symptoms including chronic shoulder pain, fatigue, generalized pain, carpal tunnel syndrome, depression, numbness in her hands, radiant leg pain, and swelling in her joints. (AR 48-59). Phillips stated that she underwent left shoulder surgery in 2004, which helped her range of motion, but she still suffers from pain in her shoulders. (AR 49). Phillips takes several medications to treat her pain, and testified that the medication causes her to nap for two to three hours per day. (AR 57). Phillips refused surgery for carpal tunnel syndrome in her hands because her doctors could not tell her what the cause of her pain was. (AR 50).

Phillips attended high school as well as culinary school, where she received certificates for culinary and baking skills. (AR 44). In the last fifteen years, Phillips worked as a security guard, a housekeeper, and a cook, but stated that she stopped working in 2004 due to her pain. (AR 46-47, 61). Phillips testified that at the time of the hearing, she cared for her four-year old granddaughter an average of 12 to 21 hours per week, and

received $3.73 per hour for her childcare services. (AR 45).

Phillips testified that she can lift five pounds with some trouble, walk no more than one quarter of a mile, sit for no more than one hour, and stand for no more than half of an hour. (AR 51, 55-56).

### 2. Vocational Expert Testimony

The vocational expert, Malcolm Brodzinsky, questioned Phillips about her work history. Brodzinksy then classified her work as an institutional cook as semi-skilled with light physical demands, her work as a security guard as semi-skilled with light physical demands, and her housekeeping work as unskilled with light physical demands. (AR 62-63). The ALJ asked Brodzinksy if a person could perform Phillips' past work when that person could lift ten pounds frequently, could stand or walk and sit for six hours per day with normal breaks, could only occasionally do push pull operations with the left upper extremity, but could frequently handle and finger bilaterally. (AR 63). Brodzinsky responded that such a person could work as a security guard the way that job is performed in the national economy. *Id.*

### 3. The ALJ's Findings

At step four, the ALJ determined that Phillips has the residual functional capacity to perform light work, except she can: occasionally lift twenty pounds; frequently lift ten pounds; sit, stand, or walk for up to six hours in an eight-hour workday with normal breaks; occasionally perform push or pull operations with non-dominant left upper extremity; occasionally reach with her left upper extremity; and frequently handle/finger bilaterally. (AR 21). The ALJ found that although "the claimant's medically determinable impairments reasonably could be expected to cause the alleged symptoms … the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment." (AR 22).

In reaching his decision, the ALJ reviewed the reports of examining physicians Workman, Schwartz, Weil, Palmer, Abeyta, Ottney, and Chen. (AR 22-24). Both doctors

Abeyta and Chen found that Phillips could lift ten pounds frequently and twenty pounds occasionally. (AR 23-24). The ALJ did not note whether the other examining physicians gave an opinion as to Phillips' ability to lift weight. The ALJ noted that he assigned "the opinions of Dr. Palmer, Dr. Schwartz, the State consultative examiners, including Dr. Chen, Dr. Abyta, and Dr. Ottney, and the other medical professionals of record, some weight, so far as their opinions consistent [sic] with the RFC…." (AR 24).

In addition, the ALJ reviewed Phillips' testimony regarding her symptoms and her daily activities, and ultimately found her testimony to not be credible. (AR 22, 24-25). For example, the ALJ noted that Phillips is capable of caring for her young granddaughter, cooking, doing light housework, washing the dishes, doing laundry, and going to church, which indicates that Phillips is not totally disabled. (AR 24). The ALJ also pointed to inconsistencies in Phillips' testimony, which he found hampered her credibility. (AR 25).

Based on his finding that Phillips could perform light work with some restrictions, the ALJ determined that Phillips is capable of performing her past relevant work as a security guard. (AR 25-26). The ALJ pointed to the vocational expert's testimony, which stated that a person with the ability to lift ten pounds frequently and twenty pounds occasionally could perform work as a security guard. (AR 26).

### 4. Dr. Jones and Dr. Schwartz

Phillips argues that the ALJ did not properly address the medical opinions of Dr. Schwartz and Dr. Jones, whose opinions appear in the administrative record. Dr. Schwartz treated Phillips in 2004 and 2005. (AR 680). On September 28, 2005, Dr. Schwartz examined Phillips and issued a written report. *Id.* After discussing Phillips' symptoms and condition, Dr. Schwartz determined that "Ms. Phillips should be considered a Qualified Injured Worker. She should undergo vocational retraining. Her position does not require lifting greater than 10 pounds or repetitive forceful grasping with the hands. She should not perform work at left shoulder level or above." (AR 682).

On May 5, 2011, physical therapist Linda Stevens performed a functional capacity evaluation ("FCE") on Phillips. (AR 785). Phillips' treating physician, Dr. Emily Jones,

Case No. 12-cv-05961 NC
ORDER RE: SUMMARY JUDGMENT 4

referred Phillips to Stevens for the FCE. *Id.* The FCE determined that lifting and carrying more than fifteen pounds significantly increased Phillips' pain. *Id.* The evaluation noted that Phillips had difficulty lifting five pounds, and appeared to reach her maximum ability when lifting ten pounds. (AR 789). Phillips was able to stand for thirteen minutes and thirty seconds, and was not able to push or pull any amount of weight. (AR 790). On a multiple impairment questionnaire signed by Dr. Jones on May 18, 2011, Dr. Jones appears to have referred to the findings of the FCE. (AR 803). The first page of the questionnaire includes a hand-written note from Dr. Jones that appears to read "pls. see FSE attached." (AR 796). The next six pages of the questionnaire include a handwritten note from Dr. Jones that appears to read "See attached FCE" or "see FCE." (AR 797-802).

**C.     The Appeals Council's Denial of Review**

Phillips appealed the ALJ's decision to the Appeals Council, but the Council denied Phillips' request for review. (AR 1). Phillips initiated this action for judicial review on November 21, 2012. Dkt. No. 1. Both parties consented to the jurisdiction of a magistrate judge. Dkt. Nos. 8, 16.

## II. STANDARD OF REVIEW

A district court has the "power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the case for a rehearing." 42 U.S.C. § 405(g). The decision of the Commissioner should only be disturbed if it is not supported by substantial evidence or it is based on legal error. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005) (internal citation and quotation omitted).

When reviewing the ALJ's weighing of medical evidence, additional standards apply. *Id.*; 20 C.F.R. §416.927. Generally, "the opinion of an examining physician is entitled to greater weight than the opinion of a nonexamining physician." *Ryan*, 528 F.3d at 1198. In addition, if a claimant has a treatment relationship with a provider, and that provider's opinion is supported by clinical evidence and not inconsistent with the record, the provider will be given controlling weight. 20 C.F.R. §416.927(c)(2). "To reject [the] uncontradicted

Case No. 12-cv-05961 NC
ORDER RE: SUMMARY JUDGMENT      5

opinion of a treating or examining doctor, an ALJ must state clear and convincing reasons that are supported by substantial evidence." *Bayliss*, 427 F.3d at 1216 (internal citation omitted). However, "[e]ven if contradicted by another doctor, the opinion of an examining doctor can be rejected only for specific and legitimate reasons that are supported by substantial evidence in the record." *Regennitter v. Comm'r of Soc. Sec. Admin.*, 166 F.3d 1294, 1298-99 (9th Cir. 1999).

The report of an examiner who is not an "acceptable medical source" may be treated as such if the examiner is part of an interdisciplinary team and works closely with the treating physician. An ALJ must consider evidence from sources other than an acceptable medical source, "unless he or she expressly determines to disregard such testimony and gives reasons germane to each witness for doing so." *Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001).

### III. DISCUSSION

**A. The ALJ Committed Legal Error in Evaluating the Opinion of Dr. Jones**

Phillips argues that the opinions of examining physicians Jones and Schwartz contradict the ALJ's residual functional capacity assessment, and that the ALJ's failure to explain his rejection of those opinions was legal error. The Court agrees, at least with respect to the ALJ's failure to address the opinion of Dr. Jones.

In order to reject the opinion of a treating or examining physician, even if contradicted by other medical evidence, "the opinion of an examining doctor can be rejected only for specific and legitimate reasons that are supported by substantial evidence in the record. *Regennitter*, 166 F.3d at 1298-99. "The ALJ can meet this burden by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Embrey v. Bowen*, 849 F.2d 418, 421 (9th Cir. 1988) (citing *Cotton v. Bowen*, 799 F.2d 1403, 1408 (9th Cir. 1986)).

In *Embrey v. Bowen*, the Ninth Circuit found that the ALJ did not provide specific legitimate reasons for rejecting the contradictory opinions of two examining physicians. *Embrey*, 849 F.2d at 421. There, the ALJ summarized the medical evidence, including the

two doctors' conflicting opinions, but ultimately rejected the contradictory opinions, concluding that they were "unsupported by sufficient objective findings and contrary to the preponderant conclusions mandated by those objective findings." *Id.* The Ninth Circuit found the ALJ's explanation insufficient, noting that "[t]o say that medical opinions are not supported by sufficient objective findings or are contrary to the preponderant conclusions mandated by the objective findings does not achieve the level of specificity our prior cases have required, even when the objective factors are listed seriatim." *Id.* The ALJ failed to explain why he disagreed with the physicians, or to "give reasons for rejecting Dr. Baker's detailed assessment of Embrey's capacity for standing, lifting, carrying, and sitting for longer than 30 minutes." *Id.* at 422. The court found that the ALJ's blanket rejection of the conflicting evidence was inadequate. *Id.*

Here, although the ALJ provided specific reasons for rejecting the testimony of Phillips herself, such as her daily activities and inconsistencies in her testimony, the ALJ did not identify the opinion of Dr. Jones that contradicted his residual functional capacity assessment, yet alone provide specific reasons for rejecting the FCE's findings of Phillips' limited ability to lift weight. The Ninth Circuit requires more of an ALJ who rejects the opinion of an examining physician. The ALJ's blanket statement that he credited medical evidence consistent with his residual functional capacity assessment does not qualify as providing "a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *See Embrey*, 849 F.2d at 421.

Although defendant argues that the opinion of Dr. Jones does not adequately demonstrate that she worked in a team with physical therapist Stevens, and that Stevens' FCE is therefore not the opinion of an acceptable medical source, the Court finds that Dr. Jones' own opinion included the results of the FCE. Dr. Jones referred Phillips to Stevens for the FCE. (AR 785). Further, Dr. Jones signed a questionnaire on which she indicated to "see FCE" on several pages. (AR 797-802). Dr. Jones therefore adopted the findings of the functional capacity evaluation as her own. *See Gutierrez v. Astrue*, 10-cv-9690 PJW, 2012 WL 234366, at *4 (C.D. Cal. Jan. 24, 2012) ("when a doctor signs off on a medical form

that may have been prepared at least in part by another the Court presumes that the doctor read and understood the form and that he or she meant to endorse all of it when he or she signed off on it."). The FCE contradicts the ALJ's residual functional capacity assessment in at least one way, because it indicates that Phillips cannot lift more than fifteen pounds, and appears to reach her maximum abilities at ten pounds. (AR 789). The ALJ did not so much as identify this conflicting medical evidence, yet alone provide specific and legitimate reasons for rejecting it in making his residual functional capacity assessment. This is insufficient under the law of our Circuit.

Because this failure alone is legal error requiring remand, the Court need not address whether Dr. Schwartz's opinion was a clear contradiction of the ALJ's functional residual capacity assessment.

**B. The ALJ Erred in Failing to Address the Functional Capacity Evaluation**

A therapist is not an "acceptable medical source" under the SSA's regulations. 20 C.F.R. § 404.1513(d). However, to the extent that a source that is not an acceptable medical source works "closely with, and under the supervision of, [an acceptable medical source], her opinion is to be considered that of an 'acceptable medical source.'" *Taylor v. Comm'r of Soc. Sec. Admin.*, 659 F.3d 1228, 1234 (9th Cir. 2011). Regardless, "[u]nder this circuit's precedent, an ALJ must either consider the testimony of [a] lay witness or provide germane reasons for not crediting the testimony." *Fernandez v. Barnhart*, 68 F. App'x 820, 821 (9th Cir. 2003) (finding ALJ erred in failing to address the written opinion of a mental health counselor) (citing *Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001) ("Lay testimony as to a claimant's symptoms is competent evidence that an ALJ must take into account, unless he or she expressly determines to disregard such testimony and gives reasons germane to each witness for doing so.")).

Because, as discussed, the Court finds that Dr. Jones' own opinion endorsed the findings of the FCE, the Court need not address whether Stevens should be considered an acceptable medical source working as an agent of Dr. Jones. The ALJ erred in failing to provide specific and legitimate reasons for rejecting the conflicting findings of the FCE,

because Dr. Jones' opinion adopted the FCE, and Dr. Jones is an acceptable medical source. However, even if Dr. Jones had not included the FCE in her opinion, and even if the FCE were considered to be from an "other source," the ALJ nonetheless erred in failing to provide some germane reason for rejecting the results of the FCE. Under either analysis then, the ALJ committed legal error by being totally silent with regard to the FCE.

### IV. CONCLUSION

The ALJ failed to provide specific and legitimate reasons for rejecting medical evidence that contradicted his residual functional capacity assessment. Therefore, Plaintiff's motion for summary judgment is GRANTED. Defendant's cross-motion for summary judgment is DENIED. The Court remands for the Commissioner to consider the opinion of Dr. Jones, including the findings of physical therapist Stevens' functional capacity evaluation. On remand, the Commissioner must also address whether Dr. Schwartz's opinion conflicts with the ALJ's residual functional capacity assessment.

IT IS SO ORDERED.

Date: December 4, 2013

Nathanael M. Cousins
United States Magistrate Judge